J-A12009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RICHARD DAVID FAHNESTOCK | |
| Appellant | No. 1223 MDA 2020 |

Appeal from the Judgment of Sentence September 8, 2020
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0000765-2018

BEFORE: LAZARUS, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.: **FILED: August 10, 2021**

Appellant, Richard David Fahnestock, appeals from the judgment of sentence entered on September 8, 2020 in the Court of Common Pleas of Dauphin County following entry of his guilty plea to, *inter alia*, one count of rape, two counts of involuntary deviate sexual intercourse ("IDSI"), and one count of corruption of minors.[1] In addition to imposing a prison sentence of eight to sixteen years in a state correctional institution for rape, the court sentenced Appellant to state supervision for IDSI and corruption of minors, running concurrently with his prison sentence. The court also determined after a hearing that Appellant would be classified as a sexually violent predator

---

[1] 18 Pa.C.S.A §§ 3121(C), 3123(A)(7), and 6301(A)(1)(ii), respectively. Appellant's guilty plea was also entered with respect to a charge of statutory sexual assault. 18 Pa.C.S.A. §§3122.1(B).

("SVP"). In his sole issue on appeal, Appellant challenges the sentencing court's determination that Appellant met the criteria for an SVP. Following review, we affirm.

As reflected in the trial court's Rule 1925(a) opinion, the affidavit of probable cause reflected that the Middletown Police were advised of a case of sexual assault involving a minor child ("E.S."). In a forensic interview of E.S. and her younger sister K.S. conducted at a children's resource center, K.S. explained that she lived with E.S. as well as their mother, their brother, and Appellant. K.S. said that when she shared a bedroom with E.S., she witnessed Appellant and E.S. having sex with their clothing removed. E.S. stated that she and Appellant had both vaginal and anal intercourse and that Appellant instructed her to perform oral sex on him. She indicated that the sexual encounters began when she was 12 and lasted until she was almost 14. Trial Court Opinion, 11/17/20, at 1- 2 (citing Affidavit of Probable Cause, 1/12/18, at 1).

On September 8, 2020, prior to sentencing, the trial court conducted a hearing to determine whether Appellant should be classified as an SVP. At the hearing, the Commonwealth presented testimony of Dr. Robert Stein, a member affiliated since 1998 with the Sexual Offenders Assessment Board ("SOAB"). Dr. Stein explained that he considered the factors set forth in the statute, looking for "either a mental abnormality or personality disorder along with predatory behavior." *Id.* at 2 (citing N.T., SVP Hearing, at 7). Dr. Stein

concluded that Appellant met the criteria for a DSM-V[2] classification of "other specified paraphilic disorder of nonconsent." *Id.* at 3 (citing N.T., SVP Hearing, at 12). The finding of a disorder, coupled with a finding of predatory behavior, led to Dr. Stein's conclusion that Appellant met the criteria for an SVP. *Id.* at 2-3 (citing N.T., SVP Hearing, at 11, 12, 19).

Appellant's counsel presented testimony of Dr. Christopher Lorah. Dr. Lorah disagreed with Dr. Stein's diagnosis and concluded Appellant did not meet the SVP criteria. Dr. Lorah testified that Appellant likely met the criteria for a different diagnosis, "borderline personality behavior," but acknowledged that Appellant engaged in predatory behavior. *Id.* at 2-3 (citing N.T., SVP Hearing, 9/8/20).[3]

The trial court sentenced Appellant at the conclusion of the SVP hearing. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

As noted above, Appellant raises only one issue on appeal, framed as follows:

_____

[2] Diagnostic and Statistical Manual of Mental Disorders, Fifth Ed.

[3] We note that the certified record on appeal includes the transcript from Appellant's Sentencing Hearing on September 8, 2020, but does not include a transcript from the SVP hearing conducted the same day, prior to sentencing. Therefore, we rely on the trial court's summary of the testimony, supported by references to the notes of testimony. In his brief, Appellant does not take issue with the court's summary of the testimony or references to the trial transcript.

Whether the Commonwealth met its burden to prove by clear and convincing evidence that a person is a sexually violent predator when most of the Megan's Law statute's criteria have not been met and when the person is not a repeat sex offender?

Appellant's Brief at 4.

When considering the sufficiency of evidence supporting a trial court's SVP designation, our standard of review is as follows:

In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015), *appeal denied,* 125 A.3d 1199 (Pa. 2015) (citation omitted). On appeal from a trial court's classification of an offender as an SVP, this Court is to review, not reweigh and reassess, the evidence. *Commonwealth v. Meals*, 912 A.2d 213, 223 (Pa. 2006).

This court has outlined the process for determining SVP status, stating:

After a person has been convicted of an offense listed in 42 Pa.C.S.A. § 9799.14, the trial court then orders an assessment to be done by the SOAB to help determine if that person should be classified as an SVP.[4] An SVP is defined as a person who has

---

[4] The SOAB evaluator conducts an assessment that includes, *inter alia*, the nature of the contact with the victim; the relationship of the individual to the victim; the age of the victim; the mental capacity of the victim; the individual's prior criminal record; the individual's characteristics, including the individual's
*(Footnote Continued Next Page)*

been convicted of a sexually violent offense . . . and who has a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory. . . . Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to reoffend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element.

*Commonwealth v. Stephens*, 74 A.3d 1034, 1038–39 (Pa. Super. 2013) (cleaned up).

As reflected in his question of statement presented, Appellant contends the Commonwealth failed to satisfy most of the Section 9799.24(b) factors. Appellant's Brief at 4. Addressing that claim, the trial court noted that Dr. Stein testified regarding the factors that are most relevant to this case, including

[t]he nature of sexual contact with the victim which included penetrative sexual acts including sexual intercourse and oral sex. The age of the victim; the victim was only 12 years old when this started. The criminal history that included at least four prior sentencing dates. The history of violation of conditional release.

age. 42 Pa.C.S.A. § 9799.24(b)(1)-(4). The factors are not to be weighed to determine an SVP classification, but rather are to be used as an aid to diagnose an individual and reach a determination regarding SVP status. Trial Court Opinion, 11/17/20, at 6 (citing *Meals*, 912 A.2d at 222).

> The age of the individual; [Appellant] was not a teenager or a very young adult, he was in his 40s when this started.[5]  The length of time that the acts occurred.  The course of conduct being consistent with sustained or paraphilic sexually deviant interest.  And as previously mentioned, a statistical risk factor having four or more prior sentencing dates.

*Id.* at 7 (quoting N.T., SVP Hearing, at 8-9).  Cognizant that the Section 9799.24(b) factors are not meant to be weighed, *id.* (citing **Meals**, 912 A.2d at 922), the court concluded that the Commonwealth presented sufficient evidence through Dr. Stein's testimony to support a classification of SVP based on the factors set forth in the statute.  While Appellant complains that "most of the . . . criteria have not been met," Appellant's Brief at 4, he does not amplify this argument.  Consequently, we conclude there is no basis for this Court to disturb the trial court's determination based on the Section 9799.24(b) factors.

Appellant also contends that the Commonwealth failed to prove he suffers from a mental abnormality and argues that Dr. Stein incorrectly diagnosed Appellant with "other specified paraphilic disorder of nonconsent." Appellant's Brief at 7.  As the trial court explained, Dr. Stein came to this conclusion "because the minor victim, ES, stated that there was force and

_____

[5] Although not mentioned by Dr. Stein or the trial court, both of whom were able to observe Appellant's physical characteristics, we note that the criminal complaint filed in this case reflects that Appellant is 6'4" tall and weighs 270 pounds.  Criminal Complaint, 2/8/18, at 1.

because of her young age." Trial Court Opinion, 11/17/20, at 3 (quoting N.T., SVP Hearing, at 12).

Addressing the diagnosis, the trial court explained:

[Dr.] Stein based his diagnosis upon the finding that the sexual behavior was "nonconsent behaviorally as the victim reported force and due to her age." As stated above, the victim in this case, ES, was twelve (12) years old at the time this began. Dr. Stein testified that the relevant behavior lasted well over six months. Dr. Stein also testified that Appellant is at risk for long-term engagement in this behavior because his condition is not a curable one. Dr. Stein testified, "It's not a curable condition. It's a potentially manageable condition. And the SVP statute aids the individual in managing the condition through the long-term treatment and through community notification." Due to the incurable nature of this condition, Dr. Stein opines that the Appellant is likely to engage in this type of behavior long-term.

Additionally, on cross examination, Dr. Stein testified that Appellant's condition overrode his individual emotional volitional control by testifying, "I think generally speaking when you have a pattern of behavior like this, the conclusion would be that it overrides volitional control."

*Id.* at 8 (quoting N.T., SVP Hearing, at 8, 12-14, 18, and 28).

Dr. Lorah disagreed with Dr. Stein's diagnosis, contending instead that Appellant demonstrated a "borderline personality disorder." He suggested that a paraphilic disorder nonconsent diagnosis "should be reserved for the most violent rapists and those whose sexual behavior is contingent on raping people." *Id.* at 9 (quoting N.T., SVP Hearing, at 36). However, as the trial court recognized, the Commonwealth presented testimony from Dr. Stein "that the minor victim, ES, indicated that force was present." *Id.* (quoting N.T., SVP Hearing, at 12). Although it is his opinion that the element of force

does not need to be present when the victim is 12 years old and unable to consent, Dr. Stein noted E.S.'s statement that "Appellant sometimes forced sexual intercourse and 'he would hold her down by her arms and pull her pants off.'" *Id.* (quoting N.T., SVP Hearing, at 11).

> According to the trial court, based on Dr. Stein's testimony,
>
> Dr. Lorah rests his disagreement of Dr. Stein's diagnosis on the belief that the minor victim, ES did not say the word no. "I do understand there are some incidents where she said that he pinned her down and that he forced it quote/unquote. But there's no indication that she ever said no."

*Id.* (quoting N.T., SVP Hearing, at 36).

The trial court observed that while Dr. Lorah disagreed with Dr. Stein's diagnosis, he did acknowledge that the statute does not require a DSM-V diagnosis for an SVP determination, but rather requires a finding of a mental abnormality or personality disorder. In his report, Dr. Lorah indicated Appellant had borderline personality disorder. While he tried "to clarify his report by stating that his diagnosis of borderline personality disorder is 'provisional as opposed to likely[,]'" Dr. Lorah did concede on cross-examination that borderline personality disorder "is the best diagnosis." *Id.* at 10 (quoting N.T., SVP Hearing, at 54-55, 62). The trial court thus concluded that there was sufficient evidence to support the conclusion that Appellant suffered from a mental abnormality or personality disorder and that he is properly classified as an SVP. *Id.* at 10.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we are able to conclude that the trial court found clear and convincing evidence that Appellant is an SVP. *See Hollingshead*, 111 A.3d at 189. Therefore, we shall not disturb the trial court's determination of Appellant's SVP status.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2021